**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | No. 3:05cr176 |
| | : | |
| | : | (Judge Munley) |
| v. | : | |
| | : | |
| IVAN HALL, | : | |
| Defendant | : | |

::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

**MEMORANDUM**

Presently before the Court for disposition is Defendant Ivan Hall's motion to suppress

evidence seized from his home on May 2, 2005 pursuant to a search warrant. This matter has

been fully briefed and is ripe for disposition. For the following reasons, we will deny the

motion.

**I.    BACKGROUND**

On April 28, 2005, United States Magistrate Judge Malachy E. Mannion executed a

warrant to search Hall's residence at 59 S. Fulton Street in Wilkes Barre, Pennsylvania. The

warrant was supported by an affidavit of probable cause executed by Federal Task Force

Officer Joseph Coffay. Officer Coffay has extensive experience in the field of narcotics

investigation. (Coffay Aff. ¶¶ 5-6)

On August 7, 2003, Pennsylvania State Police Trooper Chris O'Brien witnessed an

individual purchase crack cocaine from 221 East Northampton Street, Wilkes Barre,

Pennsyvania. (Coffay Aff. ¶ 35) A subsequent search of the address uncovered a handgun,

marijuana, and crack cocaine. (Coffay Aff. ¶ 35) When officers effected the search,

numerous individuals, including Ivan Hall, attempted to flee the premises.  (Coffay Aff. ¶ 35)

When the officers apprehended Hall, they found him in possession of a quantity of

marijuana.  (Coffay Aff. ¶ 35)

On July 22, 2004, a confidential informant purchased a quantity of crack cocaine from

Umberto Cunningham, Ivan Hall, and Kevin Weatherspoon.  (Coffay Aff. ¶ 36)  The

informant drove a vehicle occupied by Cunningham and Hall. (Coffay Aff. ¶ 36-37)   Hall

telephoned Kevin Weatherspoon, and Weatherspoon directed them to meet him on Moyallen

Street to purchase the narcotics.  (Coffay Aff. ¶ 36-37)  Weatherspoon arrived at the location,

and Cunningham entered his vehicle and received the drugs.  (Coffay Aff. ¶ 37-38)

Cunningham returned to the informant's vehicle and handed the informant a substance that

laboratory tests later revealed to be cocaine base.  (Coffay Aff. ¶ 38)

Since the summer of 2004, Coffay investigated the drug trafficking activities of Eric

and Kevin Weatherspoon.  (Coffay Aff. ¶ 8)  On March 11, 13, 14, and 18, 2005, agents

intercepted coded conversations in which Kevin and Eric Weatherspoon discussed their drug

trafficking activities.  (Coffay Aff. ¶¶ 13-18)

On April 16, 2005, Eric informed Kevin that he had a quantity of drugs to provide for

him, and Kevin explained he was willing to travel to Eric's location to pick up the drugs.

(Coffay Aff. ¶ 23)  At the time, Eric was visiting Ivan Hall's residence.  (Coffay Aff. ¶ 23)

Later that day, in a coded conversation, Kevin explained that the quantity of drugs had been

placed in a residence at 85 Madison Street.  (Coffay Aff. ¶ 24)  A search of 85 Madison

Street on April 19, 2005 uncovered approximately a half kilogram of suspected crack cocaine

and over one hundred grams of suspected powder cocaine.  (Coffay Aff. ¶ 27)

On April 20, 2005, Kevin and Eric discussed whether a dealer known as "Miami" had

repaid Kevin for drugs that Kevin had fronted.  (Coffay Aff. ¶ 34)  Kevin indicated that

Miami had not provided the funds, but when he did, he would have $37,000 in drug

proceeds.  (Coffay Aff. ¶ 34)

On April 27, 2005, Coffay intercepted a conversation between "Miami," then

identified as Duwanne Patterson, and Kevin, where Patterson advised Kevin to meet him

"where we get the CD's."  (Coffay Aff. ¶ 39)  On a number of occasions, the participants in

the Weatherspoon drug trafficking enterprise referred to controlled substances as "CDs" to

mask their drug trades in telephone conversations.  (Coffay Aff. ¶ 39)

After receiving Patterson's advice, Kevin traveled to 59 S. Fulton Street, and Coffay

observed him enter the residence.  (Coffay Aff. ¶ 40)  Kevin exited the residence a short time

thereafter with Patterson and Hall.  (Coffay Aff. ¶ 40)  They proceeded to a restaurant, where

they stayed for an hour, and then they returned to 59 S. Fulton Street.  (Coffay Aff. ¶ 40)

After an hour, Kevin left the residence.  (Coffay Aff. ¶ 40)  Then Hall left the residence,

entered his vehicle, and drove around the block once.  (Coffay Aff. ¶ 40)  When he drove

around the block, he met with one individual at a street corner, and picked up two people

individually and discharged each after a short time.  (Coffay Aff. ¶ 40)  Coffay opined in his

affidavit that "the conduct observed is consistent with the fact that Hall was meeting people

3

to distribute drugs to them after having retrieved the drugs from his residence at 59 S. Fulton Street." (Coffay Aff. ¶ 40)

Shortly thereafter, video surveillance revealed that Patterson returned to 59 S. Fulton with two other individuals in the vehicle; he exited the vehicle and entered the residence; he re-entered the vehicle; drove around the block once with the two other occupants; and then Patterson exited the vehicle and returned to the residence as the vehicle drove off. (Coffay Aff. ¶ 41) Coffay opined that this behavior also was consistent with the fact that Patterson obtained drugs from the residence and then distributed them. (Coffay Aff. ¶ 41)

On April 28, 2005, Coffay executed his affidavit in support of a search warrant for Hall's residence at 59 S. Fulton Street, and on that day United States Magistrate Judge Malachy Mannion granted the application. The warrant authorized the seizure of "any and all paraphernalia evidencing the manufacture, distribution and/or ingestion of controlled substances, including but not limited to the following: items and/or substances used to prepare cocaine base (crack); cutting agents; scales; materials used to package controlled substances." The search was executed on May 2, 2005, and uncovered: 1) a black nine millimeter handgun with holster; 2) United States currency; 3) miscellaneous photographs/ paperwork; 4) a silver handgun with holster; 5) two digital scales; 6) multiple ounces of suspected marijuana; and 6) several unknown pink pills.

On May 5, 2003, the Grand Jury for the Middle District of Pennsylvania indicted Hall along with twelve other defendants for various offenses relating to drug trafficking and

firearms possession.

## II.    Probable Cause

Hall argues that there was no probable cause for Magistrate Judge Mannion to issue a

search warrant for 59 S. Fulton, and the police had no good faith basis to believe that the

warrant was issued with probable cause.  The government argues that the warrant was both

supported by probable cause and the police officers who executed the search had a good faith

basis to believe that it was.

"A magistrate judge may find probable cause when, viewing the totality of the

circumstances, 'there is a fair probability that contraband or evidence of a crime will be

found in a particular place.'"  United States v. Hodge, 246 F.3d 301, 305 (3d Cir. 2001)

(citations omitted).  A magistrate issuing a warrant must consider the facts and circumstances

in a practical, commonsense manner.  Illinois v. Gates, 462 U.S. 213, 238 (1983).  "[A]n

issuing court need only conclude that it would be reasonable to seek the sought-after objects

in the place designated in the affidavit; a court need not determine that the evidence is in fact

on the premises."  United States v. Ritter, 416 F.3d 256, 263 (3d Cir. 2005).  Indirect

evidence with no direct evidence is sufficient to support probable cause.  Id.

A district court reviewing a magistrate's probable cause determination must apply a

highly deferential standard of review.  United States v. Jones, 994 F.2d 1051 (3d Cir. 1993).

We review the magistrate's decision to determine if there was a substantial basis for him to

find that there was a fair probability that the evidence would be found.  Ritter, 416 F.3d at

263 (citing United States v. Conley, 4 F.2d 1200, 1205 (3d Cir. 1993)).  Furthermore, "the

resolution of doubtful or marginal cases in this area should be largely determined by the

preference to be accorded to warrants."  Jones, 994 F.2d at 1055 (quoting United States v.

Ventresca, 380 U.S. 102, 109 (1965)).

We will deny the motion to suppress because Coffay's affidavit provided a substantial

basis for Magistrate Judge Mannion to find there was a fair probability that narcotics would

be found at 59 S. Fulton.

Hall argues that the affidavit does not support probable cause because Coffay's belief

that C.D. was a code word for narcotics was merely speculation and his personal belief.

Coffay, however, testified that his interpretation of the term CDs was based on listening to

previous conversations where the term was used to mean narcotics.  In addition, Hall and

Patterson's activity subsequent to the Patterson's conversation referencing CDs supported

Coffay's conclusion this was a code term for narcotics.  After Patterson and Weatherspoon

met at 59 S. Fulton, *i.e.*, where they got the CDs, and after going to a restaurant, Hall used

the residence in manner consistent with its use as a drug storage location.  Hall exited the

residence, entered his car, and made a short trip around the block picking up and passengers

and then quickly discharging them after a brief period.  He then re-entered 59 S. Fulton.

Patterson engaged in similar activity.  Coffay testified that in his experience this activity was

consistent with narcotics distribution.  Indeed, this activity was similar to the manner in

which Kevin Weatherspoon distributed narcotics in the July 2004 controlled buy.  There, the

informant, Cunningham, and Hall drove to meet Weatherspoon.  Cunningham left his

vehicle, entered Weatherspoon's vehicle as a passenger, and received narcotics from

Weatherspoon.  Then he exited Weatherspoon's vehicle and re-entered the informant's car.

Thus, Weatherspoon accepted a passenger in his vehicle for a short time to distribute

narcotics to the passenger.   Hall and Patterson's activity on April 27, 2005, when viewed in

conjunction with the July 2004 controlled buy, evinced that 59 S. Fulton was a storage

location for drugs and supported Coffay's interpretation of the term CDs.

Additionally, Hall argues Patterson's direction to Kevin Weatherspoon to meet him

where they get the CDs does not support the inference that drugs were stored in the home.

He notes that it is more likely that the drugs were stored in a Chinese restuarant because after

meeting at Hall's home they proceeded to there.  We disagree.   In the phone call, Patterson

told Kevin to meet him "where we get the CD's."  Kevin proceeded to Hall's home, and after

entering the residence exited in Patterson's company.  Thus, they *met* at 59 S. Fulton, and as

per their conversation the meeting place was where they stored the CDs.  That they

proceeded to a Chinese restaurant after meeting at 59 S. Fulton is irrelevant.  Furthermore, as

discussed *supra*, Hall and Patterson's activity after returning from the restaurant indicated

that they stored narcotics at 59 S. Fulton, not the Chinese restaurant.  Therefore, based on a

totality of the circumstances, we find that the affidavit provides a substantial basis for

probable cause to search Hall's residence for narcotics.

**II.     Intentional Misrepresentations/ Material Omissions**

7

Hall asserts that the affidavit contained errors, both in including false statements and excluding exculpatory information, that require the court to suppress the seized items pursuant to <u>Franks v. Delaware</u>, 438 U.S. 154 (1978).

A court must suppress evidence seized pursuant to a warrant if: 1) the affiant included false statements in the affidavit either knowingly and intentionally or with reckless disregard for the truth; and 2) the allegedly false statements are necessary to the probable cause determination. <u>United States v. Calisto</u>, 838 F.2d 711, 714 (3d Cir. 1988) (citing <u>Franks</u>, 438 U.S. 154). "An assertion is made with reckless disregard when 'viewing all the evidence, the affiant must have entertained serious doubts as to the truth of his statements or had obvious reason to doubt the accuracy of the information." <u>Wilson v. Russo</u>, 212 F.3d 781, 788 (3d Cir. 2000). The <u>Franks</u> analysis applies not only to false statements included in the affidavit, but also to material omissions. <u>United States v. Frost</u>, 999 F.2d 737, 743 (3d Cir. 1993). "An omission is made with reckless disregard if an officer withholds a fact in his ken that '[a]ny reasonable person would have known this was the kind of thing the judge would wish to know.'" <u>Wilson</u>, 212 F.3d at 788 (quoting <u>United States v. Jacobs</u>, 986 F.2d 1231, 1235 (8th Cir. 1993)).

At this time, Hall does not seek that we suppress the evidence, but rather, simply seeks a hearing on the issue. To obtain a <u>Franks</u> hearing, the defendant must make a "substantial preliminary showing" that he is entitled to have evidence suppressed because it contained intentional or reckless false statements and these statements were necessary to the probable

8

cause finding.  United States v. Brown, 3 F.3d 673, 676 (3d Cir. 1993).  Thus, his allegations

must be accompanied by an offer of proof.  Franks, 438 U.S. at 171.   Hall has included

Coffay's testimony from a previous suppression hearing in support of his motion for a Franks

hearing.  Hall argues that Coffay's testimony demonstrates that his affidavit included

numerous reckless statements.  We will divide his arguments into three categories.  First, he

argues that Coffay recklessly concluded that "CDs" was a code word for narcotics.  Second,

he argues that Coffay recklessly included facts that he believes were poorly investigated or

lacked a direct connection to him or his home.  Finally, he argues that Coffay's conclusion

that he was an active participant in the Weatherspoons' drug trafficking enterprise recklessly

disregarded the truth.  We will address each issue seperately, and having  considered Hall's

arguments and Coffay's testimony at the hearing, we find that Hall has not made a substantial

preliminary showing to necessitate another hearing, and we will deny his motion.

### A.    CDs was Code for Narcotics

Hall argues that Coffay recklessly concluded that "CDs" was a code term for narcotics

because none of the other wiretap conversations in the affidavit include this code term.

Other portions of the affidavit include conversations where members of the conspiracy

referred to narcotics by other code names, but in none of the other conversations discussed in

the affidavit did they refer to narcotics as CDs.  While the affidavit did not list every

conversation where the parties used the phrase CDs, it did explain, "On a number of

occasions during the interception of wire communications in this case, the participants in the

drug trafficking enterprise under investigation have referred to controlled substances as CD's in order to mask the fact that they are talking about drugs on the telephone." (Coffay Aff. 39)  Thus, Coffay did not base his opinion merely on speculation or his own belief, but on his experience listening to the defendants use this term to refer to drugs.  Police officers are entitled base their interpretations of facts upon their experience.  See, e.g., United States v. Harvey, 2 F.3d 1318, 1323 (3d Cir. 1993) (upholding validity of search warrant where police officer explained that he had probable cause to believe that the defendant retained child pornography in his home because, in his experience, "pedophiles rarely, if ever, dispose of sexually explicit material.")

Hall further argues that Coffay recklessly interpreted the term CDs because, during the previous suppression hearing, Coffay admitted he incorrectly believed that CDs referred to cocaine when he submitted his affidavit, but after the execution of the warrant he altered his opinion and now believes that CDs referred to marijuana.  This, however, is not a 'false statement' in the affidavit because the affidavit did not specify the type of drug to which CDs referred.  Instead, it stated that CDs was a reference to "controlled substances" in general.  Furthermore, the evidence that caused him to change his opinion was discovered after the execution of the warrant.  Since Coffay did not have this information when he executed the affidavit, he could not have included it for the Magistrate Judge's consideration nor did he have reason to doubt his original interpretation.

Hall has produced no evidence, nor even an argument, that Coffay had reason to

10

believe that the references to CDs were innocuous and that the parties were in fact using the

term for a more common meaning, such as compact discs or certificates of deposit.   In

addition, the remainder of the affidavit supports Coffay's interpretation.  As discussed *supra*,

after Weatherspoon and Patterson met at 59 S. Fulton, Patterson and Hall engaged in activity

consistent with the use of the location for drug storage.  Thus, viewing the totality of the

circumstances, Coffay had no obvious reason to doubt that CDs referred to narcotics, and his

interpretation of this phrase was neither false nor did he include it in reckless disregard for

the truth.

     **B.**     **"Reckless" Information**

     Hall argues that much of the information included in the affidavit was "reckless"

because it had an insufficient connection to his participation in narcotics trafficking.  For

example, he argues that Coffay should not have included evidence that: a) on August 7, 2003

Hall was found to be in possession of a quantity of marijuana after being caught fleeing a

residence; and b) Hall participated in the July 22, 2004 controlled purchase of cocaine from

Kevin Weatherspoon.   Hall does not argue that this information was either false or that

Coffay should have had serious doubts as to its accuracy.  Rather, he argues that this

information viewed alone, without reference to the rest of the information in the affidavit,

fails to support the inference that he was an active participant in a drug conspiracy because it

does not directly link him with the sale of narcotics and both incidents happened long before

the execution of the warrant.  We will not, and indeed cannot, view each piece of evidence in

the affidavit in a vacuum.  "A magistrate judge may find probable cause when, viewing the

<u>totality of the circumstances</u>, 'there is a fair probability that contraband or evidence of a

crime will be found in a particular place.'"  <u>United States v. Hodge</u>, 246 F.3d 301, 305 (3d

Cir. 2001) (emphasis added) (citations omitted).  Viewed in conjunction with the remainder

of the affidavit, the temporal remoteness of the arrest and controlled buy is insufficient for

Coffay to doubt his conclusion that Hall was a participant in the drug trafficking scheme.

Coffay included additional information, discussed *supra*, that related to drug activity based

out of Hall's home on April 27, 2005, the day immediately prior to the execution of his

affidavit.  "The fact that evidence of the suspected criminal activity continued up through the

last weeks before the search strongly suggests that the information in the affidavit was not

stale."  <u>United States v. Williams</u>, 124 F.3d 411, 412 (3d Cir. 1997).  Therefore, Hall has

produced insufficient evidence that Coffay's interpretation of the information in the affidavit

was false or that Coffay must have had serious doubt or obvious reason to doubt its accuracy.

### C.    Reckless Conclusions

Finally, Hall argues Coffay's conclusion that Hall was a participant in a drug

trafficking scheme and narcotics were stored in 59 S. Fulton was reckless because the

affidavit contained little direct evidence relating to Hall.  For example, he argues that he did

not participate in any of the intercepted phone calls, no individual was seen leaving his

residence with a bag or satchel, Eric Weatherspoon did not call Hall when he made phone

calls to indicate he had drugs available, Coffay had not conducted a controlled buy where

12

Hall was the seller, no informant ever saw drugs inside the home, and Coffay could not verify whether Hall was convicted following his August 2003 arrest.

Hall's argument focuses on the evidence that was not obtained while ignoring the evidence that was. There is no requirement that an affiant obtain direct evidence to support a probable cause determination. "[A] warrant may issue even in the absence of direct, first-hand evidence." Ritter, 416 F.2d at 262. An affiant need only establish a fair probability that the evidence will be found in the property, and probable cause determinations do "not require the fine resolution of conflicting evidence that a reasonable doubt or even a preponderance standard demands." Gerstein v. Pugh, 420 U.S. 103, 121 (1975). Illinois v. Gates, 462 U.S. 213, 238 (1983). "Search warrant affidavits 'are normally drafted by nonlawyers in the midst and haste of a criminal investigation. Technical requirements of elaborate specificity have no proper place in this area." United States v. Brown, 3 F.2d 673 678 (3d Cir. 1993) (quoting United States v. Ventresca, 380 U.S. 102, 108 (1965)). As we have noted above, despite the lack of direct evidence, Coffay's affidavit provides a sufficient basis to find probable cause to search Hall's home for narcotics. Given the history of drug activity, the controlled buy, the intercepted conversations, the April 27, 2005 activity, and the extent to which the participants in the conspiracy concealed their conversations and activity, the lack of direct evidence provides no reason for Coffay to question the accuracy of his information. Therefore, the lack of direct evidence was not a reason for Coffay to entertain serious doubts as to the accuracy of the information included in his affidavit or the conclusions he drew

13

therefrom.  Accordingly, we find that Hall has not established a substantial preliminary

showing that Coffay recklessly or intentionally included false information or excluded

material information, and we will deny his <u>Franks</u> motion.

## III.    Scope of Warrant

Finally, Hall argues that the guns must be suppressed because they were not within the

scope of the warrant.  We disagree.  The warrant allowed the seizure of "[a]ny and all

paraphernalia evidencing the manufacture, distribution, and/or ingestion of controlled

substances."  The firearms are paraphernalia evidencing the distribution of controlled

substances.  "It is well established that firearms may be considered items used in connection

with controlled substances."  <u>United States v. Calisto</u>, 838 F.2d 711, 716 (3d Cir. 1988)

(finding firearms were within the scope of a warrant to seize "items used in the manufacture,

sale, use, etc. of controlled substances").   Therefore we will deny the motion to suppress the

firearms because they were within the scope of the warrant and were appropriately seized.

## IV.    Conclusion

Therefore, based on the totality of the circumstances, we find that Coffay's affidavit

provided a substantial basis for the magistrate judge to conclude there was a fair probability

that narcotics and evidence of narcotics trafficking would be found at Hall's residence at 59

S. Fulton Street.  In addition, Hall failed to make a substantial preliminary showing that

Coffay included false material information or omitted material information either

intentionally or with reckless disregard for the truth.  Finally, the weapons seized from his

14

home were within the scope of the warrant.  Accordingly, we will deny his motion to

suppress.  An appropriate order follows.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | **No. 3:05cr176** |
| | : | |
| | : | **(Judge Munley)** |
| v. | : | |
| | : | |
| **IVAN HALL,** | : | |
| **Defendant** | : | |

::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## <u>ORDER</u>

**AND NOW**, to wit, this 4th day of May 2006, Defendant Ivan Hall's Motion to

Suppress (Doc. 206) is hereby **DENIED**.

**BY THE COURT:**

**s/ James M. Munley**
**JUDGE JAMES M. MUNLEY**
**United States District Court**

16